# Holmes *v.* Bank of Fort Gaines.

*Action on a Promissory Note.*

120 493
127 269

1. *Pleading and practice; error without injury in sustaining demurrer to plea.*—The sustaining of a demurrer to a plea, even though erroneous, is not prejudicial when another plea, which is substantially the equivalent of the first, is filed and not demurred to.

2. *Action upon a promissory note; when negotiability determined by the common law.*—In an action upon a promissory note, which is payable in another State, in the absence of an averment in the pleadings showing what the statute laws of that State are, relating to the negotiability of notes, the negotiability of the notes sued on will be determined according to the common law.

3. *Same; negotiability of notes under the common law.*—Under the common law, a note containing an unconditional and absolute promise to pay a certain sum of money to another, or his order, at a fixed time, was negotiable, it not being necessary to the negotiability of such note that there should be a place of payment named; but the designation of a place of payment does not affect its negotiability at common law.

4. *Same; same; sufficiency of pleading* —An allegation in a plea or replication that the note sued on was executed by the defendant on a certain date and payable to a certain named person in a certain amount at a fixed time, sufficiently shows that the note was negotiable at common law.

5. *Same; same; sufficiency of replication.*—In an action upon a promissory note, where the defendant bases a plea of *non est factum* upon an alleged material alteration in the note, a replication to such plea wh'ch alleges that no material alteration was made by the plaintiff in said note, or any one authorized by him, that the plaintiff acquired it before maturity for value without any notice of such alteration, and there was nothing on the face of the note reasonably calculated to excite the suspicion of a careful man, but that the maker of said note had left room for the alteration to be made without defacing it, is a sufficient response to the alleged defense, and not subject to demurrer.

6. *Promissory note; when material alteration does not vitiate note in the hands of a bona fide purchaser* —When the maker of a promissory note, by the careless execution of the instrument, leaves room for the insertion therein of a place of payment, without defacing said note or exciting the suspicion of a careful man, the altera-

[Holmes v. Bank of Fort Gaines.]

tion of said note by the insertion of the place of payment, although material, will not vitiate the note; and affords the maker no defense thereto as against a *bona fide* holder who purchases it before maturity without knowledge or notice of such alteration.

7. *Transfer of negotiable note; when not tainted with usury.*—A negotiable note, which is a valid debt in the hands of the rightful holder, may be bought and sold as any other chattel at its real or supposed value; and the transfer of such instrument at a discount greater than the legal rate of interest is not usurious, although the transferror may have endorsed it; and such discount does not deprive the transferee of the protection of a *bona fide* purchaser.

APPEAL from the Circuit Court of Henry.

Tried before the Hon. J. W. FOSTER.

This action was brought by the Bank of Fort Gaines against J. E. Holmes, the appellant, and the plaintiff claims of the defendant the sum of one hundred and thirty-five dollars, due November 10, 1897, by promissory note, containing a waiver of exemptions as to personal property, executed by the defendant on October 28th, 1896, and payable to the order of H. W. Rumbley, which said note and .debt evidenced thereby have since been transferred to and are now the property of the plaintiff. There was also a claim for attorney's fees.

The note sued on was introduced in evidence and was in words and figures as follows: "135.00. Wesley, Alabama. 10 / 28 / 1896.

"On or before March 10th, 1897, I promise to pay to the order of H. W. Rumbley at Bank of Fort Gaines, Ga., one hundred and Thirty Five Dollars, for value received, and I hereby waive all right of exemption as to personal property against the payment of this debt under the laws of Alabama and agree to pay all expenses in counsel fees or otherwise that may accrue in the collection of this debt. [Signed.] J. E. Holmes. (L. S.)"

The transfer endorsed on said note was as follows: "For value received I hereby transfer the within note to Bank of Fort Gaines. I endorse the same and waive demand and notice of protest when due. I further waive all rights and exemptions. [Signed.] H. W. Rumbley."

The defendant filed six pleas, which were as follows: "*First.* Non-assumpsit. *Second.* Want of considera-

tion. *Third.* Failure of consideration. *Fourth.* Fraud in the execution of the note sued on in this case by H. W. Rumbley, the original payee of said note. That said Rumbley, claiming to be the owner of certain patent rights to sell Planters' Registers, procured the names of a large number of prominent and responsible planters and business men of the county and, as an inducement for defendant to buy county rights, represented to him that the sale of said Planters' Registers was a very profitable and lucrative business, and to fortify himself in this statement he exhibited to defendant the aforesaid list of responsible planters and business men, and falsely and fraudulently represented to defendant that all of said planters and business men had bought each a copy of said book at and for the price of $2.90, and that with only a small outlay of time and money he had sold said book to 18 out of every 20 men in Henry county, and that the percentage of 18 out of every 20 men was the usual and customary number of planters sold to by owners of county rights to said Planters' Register. *Fifth.* That the execution of the note sued on was procured by H. W. Rumbley from defendant by fraud in this : That the consideration of said note was the sale by said Rumbley to defendant of a patent right to sell the Planters' Register in the county of Randolph, State of Georgia, and the sale by Rumbley to defendant of 300 Planters' Registers for the sum of $570, and that the said Planters' Registers were to be delivered to the defendant by the Webb Stationery & Printing Co., and he was to pay Rumbley therefor, the sum of $2.90 each and the privilege of defendant buying from said stationery company all the Planters' Registers he may desire at the price of $1.00 each so long as his agency with the Planters' Register' Company continued, and that the said Rumbley represented to defendant, at the time of the execution of said note, that the said The Webb Stationery and Printing Company would not sell any person a Planters' Register in the territory which had been sold to said agents by the Planters' Register Company, and defendant avers that said representations were false and by reason of said representations defendant was induced to and did sign said note. *Sixth.* For further answer to said complaint defendant says the execution of the note sued on was

procured by one H. W. Rumbley from defendant by fraud in this: That the consideration of the note sued on was the sale by said Rumbley to defendant of a patent right to sell the Planters' Registers in the county of Randolph, State of Georgia, and the privilege along with said Planters' Register Company to sell in the counties of Henry, Barbour, Coffee, Geneva, State of Alabama, and Quitman, Clay and Early, State of Georgia, and the sale by Rumbley to defendant of three hundred Planters' Registers for the sum of $570 which were to be delivered to defendant by the Webb Stationery & Printing Company, for which he was to pay the sum of $2.90 each, and the privilege of his buying from said Stationery Company all the Planters' Registers that he might desire for the sum of $1.00 each, so long as his agency with the Planters' Register Company continued. The said Rumbley represented to defendant at the time of the execution of said note that said Stationery and Printing Company would not sell any person a Planters' Register in the territory which had been sold to any agent by the said Rumbley. That said Rumbley procured the names of a large number of the prominent planters of the county, and as an inducement for defendant to buy county rights, represented to him that the sale of said Planters' Register was a very profitable and lucrative business, and to fortify himself in the statement he exhibited to defendant the aforesaid list of responsible planters and falsely and fraudulently represented to defendant, that all of said planters had bought each a copy of said book at the price of $2.90, and that with only a small outlay of time and money he had sold said book to 18 out of every 20 men in Henry county, and that the percentage of 18 out of every twenty men was the usual and customary number of planters sold to by owner of county rights to said Planters' Register, which representations were wholly untrue and absolutely false, and by reason of said representations so made by said Rumbley to defendant, he was induced to and did sign said note."

After the demurrers were interposed to the 2d and 3d pleas, which were confessed as to the 3d, and sustained as to the 2d, the defendant then filed the pleas numbered 2 and 2½, which were as follows: "2. Comes the de-

[Holmes v. Bank of Fort Gaines.]

fendant and for answer to the complaint in this cause, says: the consideration of the note sued on was the promise of the Planters' Register Company to ship the defendant three hundred books known as Planters' Register, and that said company had failed to ship said books." "No. 2½. For further answer to said complaint, defendant says there was no consideration moving to him or any one else for the execution of the note sued on." The other rulings upon the pleadings and the facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court at the request of the plaintiff gave the general affirmative charge in its behalf. To the giving of this charge the defendant duly excepted, and also excepted to the court's refusal to give the general affirmative charge requested by him. There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

ESPY & FARMER and P. A. McDANIEL, for appellant, cited *Saltmarsh v. Tuthill*, 13 Ala. 390 ; *Carlisle v. Hill*, 16 Ala. 398 ; *Capital City Ins. Co. v. Quinn*, 73 Ala. 558 ; Daniel on Negotiable Instruments, § § 751, 752, 753.

J. G. COWAN and W. O. LONG, *contra.*—The replication to the plea of *non est factum* was sufficient, and the demurrer thereto was rightly overruled.—1 Daniel on Negotiable Instruments, § 879 ; *Beal v. Wainwright*, 6 Ala. 156.

The purchase of the note sued on by the plaintiff was not tainted with usury, and the plaintiff was a *bona fide* purchaser thereof ; and the note being a negotiable instrument the defenses sought to be interposed by the defendant are not maintainable. The general affirmative charge was properly given at the request of the plaintiff. *Ins. Co. v. Quinn*, 73 Ala. 558 ; *Hart v. Adler*, 109 Ala. 467 ; *Youngblood v. Birmingham T. & S. Co.*, 95 Ala. 521 ; *Planters & Mer. Bank v. Goetter*, 108 Ala. 408.

TYSON, J.—The original complaint in this case was amended to cure defects pointed out in the demurrer as-

signed to it. To the amended complaint the defendant interposed seven pleas. It is not necessary to consider all of them as only two of them, numbered two and three, were demurred to. The record of the judgment entry recites that the demurrer to plea number three was confessed by defendant and it appears that defendant filed additional pleas numbered two and two and one-half containing substantially the same language as original plea number two, to which no demurrer was interposed. There was, therefore, no injury done defendant by the action of the court in sustaining demurrer to this plea.

To the pleas numbered 2, 2½, 3, 4, 5 and 6 the plaintiff replied specially that the note sued on is payable in money to the order of one Rumbley at the Bank of Fort Gaines, Ga., and plaintiff purchased it in the usual course of business for valuable consideration before maturity, without notice of any defense to said note or of any defect or infirmity therein. The objection taken to this replication by demurrer was that it fails to allege the note sued on is commercial or negotiable paper. It nowhere appears in the complaint or pleas where the note, the foundation of the suit, was executed and delivered by its maker to the payee. It is averred in the replication that it is payable in the State of Georgia, and the complaint shows that the plaintiff is a corporation chartered under the laws of Georgia and doing business in that State. In the absence of an averment showing what the statute laws of that State are, relating to the negotiability of notes, we must presume that they are governed by the common law.—1 Dan. Neg. Inst., § 891; *Dun v. Adams, Parmeter & Co.*, 1 Ala. (N. S.) 527; *Beal & Bennett v. Wainwright, Shields & Co.*, 6 Ala. 158; *Evans v. Clark*, 1 Port. 388. At common law every note containing an unconditional and absolute promise to pay money only to another or his order at a fixed time, specifying the sum of money to be paid was negotiable. 1 Dan. Neg. Inst., § 28; Byles on Bills [*5] and note; 2 Am. & Eng. Encyc. of Law, 318–322. It was not required that any place of payment should be named, but if one was designated it did not affect its negotiability. 1 Dan. Neg. Inst., § 90; 2 Am. & Eng. Encyc. of Law, 328, and authorities cited in note 6; *Beal & Bennett v.*

[Holmes v. Bank of Fort Gaines.]

*Wainwright, Shields & Co., supra.* Testing the replication by these principles and construing it in connection with the pleas it purports to answer and the averment of the complaint that the note sued on was executed by the defendant on the 28th day of October, 1896, to H. W. Rumbley in the sum of $135, due March 10th, 1897, and transferred by him to the plaintiff, we hold that it is not subject to the demurrers.

Plea numbered 7 was in Code form of plea of *non est factum,* and to it plaintiff, as appears from the judgment entry, filed two special replications; only one of them, however, is set out in the record. This replication avers that defendant executed the note sued on and that the plea is based upon an alleged material alteration in the note, and for the purpose of avoiding the legal effect of the alteration, avers that said note was payable in money at the Bank of Fort Gaines, Ga., and was purchased by plaintiff in the usual course of business for a valuable consideration without notice of any alteration, defect or infirmity in said note, or defense thereto; that no material alteration was made by plaintiff in said note or any one authorized by him; there was nothing on the face of the note reasonably calculated to excite suspicion of a careful man; and that the maker had left room in said note for an alteration to be made therein without defacing it. There were some six grounds of demurrer assigned to this replication. All of them except the sixth raise the sufficiency of the allegation of the material alteration, such as that its character is not averred, what alteration was made, when made, by whom made, and whether made before or after plaintiff became the owner of the note. The gist of the replication is not that a material afteration was made in the note; but if such was the case, the plaintiff acquired it before maturity for value, without any notice of such alteration, that nothing appeared upon its face to arouse his suspicions, and that its maker had left room for an alteration to be made without defacing it. The averment as to the material alteration very clearly appears to be a statement of the pleader of a fact relied upon by the the defendant to support his plea of *non est factum.* The sixth ground of demurrer was that it is not averred that the alteration was not made by plaintiff. We cannot conceive how the replica-

tion could have been more explicit on this point. It expressly avers that it was not made by plaintiff or any one authorized by him, and we may add that the only reasonable inference to be deduced from the replication is that the alteration, if made, was made before the note was purchased by plaintiff. The demurrers were properly overruled.—*Winter & Loeb v. Pool*, 104 Ala. 580, and authorities cited.

The only remaining question is, was there error in giving the general affirmative charge for plaintiff, and refusing it to defendant? The evidence is without dispute that defendant executed to H. W. Rumbley the the note sued on dated at Wesley, Alabama, October 28th, 1896, in the sum of $135, payable to his order at (the Bank of) Fort Gaines, Ga., due March 10, 1897, containing a waiver of exemptions as to personal property under the laws of the State of Alabama. That on November 14, 1896 for value, the said Rumbley transferred the note, on the back thereof, and delivered it to the plaintiff at his place of business in Fort Gaines, Ga., waiving demand and notice of protest, and waiving his right of exemptions in the indorsement. The cashier of plaintiff corporation made the transaction with Rumbley, and he testifies that no change or alteration was made in the note at the time he purchased it and none has been made since. That he paid $124.20 for it, and the note was at the date of the purchase payable at "the Bank of Fort Gaines, Ga." That no loan was made by plaintiff to Rumbley, but the rate of discount was about 2 per cent. per month, and "that anything in the State of Georgia was usury which was over 8 per cent. *per annum*." The defendant testified that he signed the note, but that the words "Bank of" were not in it when he signed it, and that it read "payable at Fort Gaines, Ga." We have stated all the evidence that is material to the point under consideration. The defendant having proven without dispute that these words were inserted, this destroyed the validity of the note, and this is true whether its negotiability was governed by the laws of Alabama or the common law.—2 Dan. Neg. Inst., § 1378 ; Byles on Bills, 319, note 2 ; *Winter & Loeb v. Pool*, 100 Aa. 503.

This court said in *Winter & Loeb v. Pool, supra,* "that upon proof that the paper had been altered, the burden would be cast upon the plaintiff to overcome its presumed invalidity." The plaintiff's counsel in this case in the framing of the replication to the plea of *non est factum* recognized this doctrine. An inspection of the original note, which has been properly certified to us, shows conclusively that if the words ''Bank of'' were not in the said note when executed by defendant, that there was a careless execution of it by leaving room for this insertion to be made without defacing said note or exciting the suspicions of a careful man. This taken in connection with the testimony of the cashier of the bank, proved without dispute the facts as alleged in plaintiff's replication, and shifted the burden of proof upon defendant to show that plaintiff had notice of the alteration prior to or at the time of the purchase of said note by it, which burden defendant failed to discharge. It appears that plaintiff purchased the note at a profit greater than the interest would have amounted to, at the rate of 8 per cent. per annum, this being the legal rate of interest fixed by the laws of Georgia. This did not affect its *bona fides* as a holder.—*Capital City Ins. Co. v. Quinn,* 73 Ala. 558, and authorities there cited. The authorities relied on by appellant bearing upon this proposition are discussed in *Capital City Ins. Co. v. Quinn, supra,* and distinguished from that case and the one under consideration. See also *Orr v. Sparkman,* and authorities therein cited, *ante,* p. 9.

There was no error in giving the general affirmative charge for plaintiff, and therefore no error in refusing the charge requested by defendant.

Judgment affirmed.